UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANE YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:12-cv-00317-MJD-RLY |
| MICHAEL J. ASTRUE Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Diane Young requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[1]

**I.   Procedural History**

Young filed an application for DIB and SSI on August 18, 2008, alleging an onset of disability of January 1, 2007. Young's applications were denied initially on November 5, 2008, and upon reconsideration on January 16, 2009. Young requested a hearing, which was held on October 14, 2010 before Administrative Law Judge Tammy Whitaker ("ALJ"). The ALJ denied

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

Young's applications on December 1, 2010. The Appeals Council denied Young's request for review on January 12, 2012, making the ALJ's decision the final decision for purposes of judicial review. Young filed her Complaint with this Court on March 12, 2012.

## II.  Factual Background and Medical History

Young was 40 years old on the alleged disability onset date and has limited education. She first sought psychiatric evaluation for Social Security on September 20, 2008. Consulting psychiatrist Aldo Buonanno, M.D. examined Young. Young reported that she had suicidal ideation, hallucinations, paranoia, and no close friends. Young also reported that she drove (but sometimes would have to pull over when she got too anxious), cooked for herself, attended church, tended to her own personal care without assistance, and was a good cleaner. Dr. Buonanno diagnosed Young with bipolar disorder-mixed and rule out schizoaffective disorder.[2] He also assessed her with a Global Assessment of Functioning ("GAF") of 49.

Young next sought treatment at Howard Behavioral Health Services ("Howard"). She received an initial assessment on January 19, 2009 and was seen by social worker Melissa Beard, L.C.S.W. Young reported that her last job was working at Taco Bell and that she stopped working in December 2008 after three months due to depression. She also reported that she used to be very active in church, but no longer had the strength, and that she did not cook or clean like she had in the past. Ms. Beard indicated that Young showed no intrusion, attachment, dissociation issues, or problems with anger control. Ms. Beard also noted that Young was fully capable of independent living and there was no evidence of antisocial behavior. At the initial assessment, Ms. Beard diagnosed Young with major depressive disorder, moderate to severe

---

[2] "'Rule out' in a medical record means that the disorder is suspected, but not confirmed – i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." *Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing *United States v. Grape*, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

with psychosis, rule out schizoaffective disorder, and assigned a GAF of 50.  She also referred Young to individual therapy with social worker Carol Turner.

Young met with Carol Turner for two individual sessions, the last one being on February 12, 2009. Turner indicated that Young made some progress at increasing her daily functioning. Young was discharged from Howard on April 13, 2009 for failing to return for treatment. Her diagnosis at discharge was major depressive disorder, recurrent – severe with psychosis, and a GAF of 50.

B. Randal Horton, Psy.D., the state agency reviewing psychologist, completed a Psychiatric Review Technique on October 31, 2008 and on November 3, 2008. Both assessments are substantially similar except the assessment in November diagnoses Young with bi-polar disorder, mixed. The assessments indicate that Young's impairments fall under Listing 12.04 Affective Disorders, but are not severe. Regarding Young's functional limitations, Dr. Horton opined that she had mild limitations in her activities of daily living; social functioning; and concentration, persistence, or pace. She had no extended episodes of decompensation and did not meet the paragraph "C" criteria. Joelle Larsen, Ph.D. reviewed Young's file and affirmed Dr. Horton's opinion on January 15, 2009.

## III.    Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[3] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181

(7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

The ALJ first determined that Young met the insured status requirements of the Act through December 31, 2010. Applying the five-step analysis, the ALJ found at step one that Young had not engaged in substantial gainful activity since the alleged onset date of January 1, 2007. At step two, the ALJ found that Young had the following severe impairments: bipolar disorder-mixed and depression. The ALJ also found that a need to rule out schizoaffective disorder is not a medically determinable impairment.

At step three, the ALJ determined that Young did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(c) and 416.920(c)). The ALJ evaluated Clark's mental impairments under Listing 12.04. Specifically, the ALJ considered whether the "paragraph B and C" criteria were satisfied. To satisfy "paragraph B," the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ determined that Young had mild restriction in activities of daily living and social functioning, moderate difficulties in maintaining social functioning, moderate difficulties

in maintaining concentration, and no extended episodes of decompensation. Thus, the ALJ determined that Young's mental impairments did not meet the "paragraph B" criteria. Evaluating Young's mental impairments under the "paragraph C" criteria, the ALJ found that, in addition to no episodes of decompensation of extended duration, a minimal increase in mental demands would not cause Young to decompensate, and Young did not have a current history of an inability to function outside a highly supportive living arrangement. Therefore, the ALJ determined that Young's mental impairments did not meet the "paragraph C" criteria.

The ALJ found that Young had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: Young must be allowed to be off task for 10% of the day; her employer must tolerate one absence per month; her work must be limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements and involving simple, work-related decisions with few, if any, work place changes; and no interaction with the general public and only occasional interaction with co-workers with no tandem tasks.

At step four, the ALJ determined that Young was unable to perform any past relevant work. At step five, the ALJ determined that, considering Young's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Young could perform. Therefore, the ALJ determined that Young was not disabled. The ALJ denied Young's request for a supplemental hearing with a medical expert.

### V.     Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that Young is not disabled. Young raises four arguments as to why this Court should reverse the decision of the ALJ: 1) substantial evidence fails to support the ALJ's

decision not to give controlling weight to the opinions of the treating physicians; 2) the ALJ's failure to summon a medical advisor to testify is reversible error; 3) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p; and 4) substantial evidence fails to support the ALJ's step five determination. For the reasons listed below, the Court finds that there is substantial evidence to support the ALJ's determination that Young was not disabled.

### A.     Substantial Evidence Supports the ALJ's Step Three Determination.

Young's first two arguments deal with the ALJ's step three determination. Specifically, Young argues that the ALJ failed to give controlling weight to the opinions of the treating and examining physicians that she was disabled and that it was reversible error for the ALJ not to summon a medical expert to testify as to whether Young's combined impairments medically equaled a listed impairment.

#### 1.  Substantial evidence supports the weight given to Young's physicians.

Young argues that the ALJ failed to give controlling weight to the opinions of Young's treating physicians that she was disabled. None of Young's physicians stated or implied that Young was disabled or had an impairment that met or medically equaled one of the listed impairments. Young argues that the ALJ "ignored treatment evidence providing basis for the opinions that the claimant's impairments precluded her from working." Brief for Plaintiff at 14, *Young v. Astrue*, No. 1:12-cv-00317-MJD-RLY (S.D. Ind. November 8, 2012), ECF No. 19 [hereinafter Dkt. 19]. However, Young points to no evidence in the record that any physician opined that the claimant's impairments precluded her from working and the Court did not find any.

Young points to Dr. Buonanno and Howard's diagnosis that Young had a GAF of 49 and 50 as support that her treating physicians opined that she was disabled. She argues that the ALJ misstates the DSM IV-TR definition of the GAF scores of 49 and 50 by "omit[ting] that it was also defined as meaning that the person would be 'unable to keep a job,' . . . i.e. is totally disabled from work." [Dkt. 19 at 10.]; Reply Brief for Plaintiff at 7, *Young v. Astrue*, No. 1:12-cv-00317-MJD-RLY (S.D. Ind. December 11, 2012), ECF No. 29 [hereinafter Dkt. 29]. However, it is Young, and not the ALJ, that misstates the definition. The DMS IV definition of a GAF score in range from 41 to 50 states "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM IV-TR), 32, 34 (Text Revision, 4th ed. 2000). Being unable to keep a job is merely an example or condition of the definition; it does not imply that it is equivalent to a disability. Even if it did imply total disability, "the GAF scale is intended to be used to make treatment decisions . . . and nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Further, the argument that the ALJ failed to give controlling weight to the opinions of the treating physicians is without merit as the ALJ gave the most weight to Dr. Buonanno. [R. 16.]

### 2. A lack of a medical expert at the hearing was not reversible error.

Young argues that the ALJ should have consulted a medical expert to determine whether her impairments met or medically equaled a listed impairment. Specifically, Young argues that the ALJ needed a medical expert to determine if Young had a disabling schizoaffective disorder

which would meet Listing 12.03, and an updated medical opinion was needed to determine if Young's impairments met or medically equaled Listing 12.04.

The ALJ correctly determined that the rule out schizoaffective disorder was not a medically determinable impairment. The ALJ found that Dr. Buonanno's diagnosis of "rule out" schizoaffective disorder meant that, "through further investigation, this diagnosis should be eliminated or definitely made. This is far from a true confirmed diagnosis, and therefore makes schizoaffective disorder not medically determinable." [R. 13.] This finding is consistent with Appellate Court decisions. *See Griffin v. Barnhart*, 198 F. App'x 561, 564 (7th Cir. 2006) ("the notation to 'rule out mild mental retardation' was by no means a diagnosis."); *Byes*, 687 F.3d at 916 n.3. Because the ALJ correctly determined that rule out schizoaffective disorder was not a medically determinable impairment, there was no need to consult a medical expert to determine if it met or medically equaled Listing 12.03.[4]

Substantial evidence also supports the ALJ's decision that Young's impairments did not meet Listing 12.04; therefore, an updated medical opinion was not required. Young argues that "the issue of medical equivalence is a medical issue and must be based on medical opinion, not on the ALJ's layperson's opinion." [Dkt. 19 at 16.] Young cites to old case law and outdated regulations to support her proposition. *See Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); 20 C.F.R. 416.926(b) (1999). However the current standard no longer requires that a decision of medical equivalence be based solely on medical evidence. *See* 20 C.F.R. 416.926(b) (2011) (removing such specific language); SSR 96-6p, 1996 WL 374180 at *3. An ALJ is only required to consider the medical opinion of a physician or psychologist designated by the Commissioner; the ALJ is not bound by that consultant's finding and the ultimate legal question of whether a

---

[4] It is also worth noting that Howard indicated a rule out schizoaffective disorder at intake; however, when Young was discharged, there was no mention of a schizoaffective disorder, implying that the physicians and/or treating counselors officially ruled it out.

9

listing is met or equaled is the responsibility of the ALJ. SSR 96-6p; 20 C.F.R. 416.926(b). The ALJ did just that. Although not specifically referred to in the step three analysis, the ALJ considered the opinions of the state agency psychologists. [R. 16.] These psychologists opined directly on the issue of medical equivalence and found that Young's impairments were not severe and that they did not meet or equal a listing. [R. 247-260, 281, 282-295.] Here, the ALJ disagreed with the state agency's opinions and found that Young did have a severe impairment and accounted for greater restrictions than the state agency psychologists accorded. In deciding whether the impairments met the "paragraph B" criteria, the state agency psychologists determined that Young had mild restrictions in activities of daily living, maintaining social functioning, and concentration. The ALJ permissibly rejected these opinions and found that Young had moderate difficulties in social functioning and concentration, relying upon Young's testimony and Young's daughter's report to the Commissioner as support. However, that still is not enough to satisfy "paragraph B" as it requires two areas of marked restrictions or one area of marked restriction and extended episodes of decompensation, and Young had none.

Even if the ALJ should have specifically cited to the state agency's or the other medical opinions in the step three analysis, the error was harmless. Young had the burden of proving not only that her impairments met a listing, but that her impairments satisfied all of the criteria specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir.1999). Young points to no evidence in the record, other than her GAF scores, that her impairments met or medically equaled a listing. She does not argue that she met the "paragraph B" or "paragraph C" criteria to meet Listing 12.04 or even 12.03. Young cites to no evidence in the record to support a claim that her impairments met or medically equaled a listing and, thus, has not met her burden. Neither Dr. Buonanno nor Howard opined on

10

the issue of medical equivalency. Had the ALJ relied on the only medical opinions that discussed the issue of medical equivalence, the outcome would still be the same: Young's impairments did not meet or medically equal a listed impairment.

Young also argues that the ALJ should have obtained an updated medical opinion because the state agency opinion did not include Howard's treatment evaluations which were submitted after the agency completed review. SSR 96-6p requires an ALJ to obtain an updated medical opinion "when additional medical evidence is received that in the opinion of the [ALJ] may change the State agency's medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p; *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("SSR 96-6p requires an ALJ to secure another expert opinion only when, in the opinion of the administrative law judge, new evidence might cause the initial opinion to change.") (internal quotations omitted). The opinion of the state agency psychologists were that, based on the opinions submitted by Dr. Buonanno, Young's impairments were not severe and did not meet or medically equal any listing. As Young points out in her brief, the opinions of Dr. Buonanno and Howard are "remarkably consistent." [Dkt. 19 at 11.] Therefore, the additional medical evidence would not have changed the state agency's findings or the outcome of the disability determination. Thus, the ALJ did not err in not obtaining an updated medical opinion.

**B.     Substantial Evidence Supports the ALJ's Credibility Determination.**

Young next argues that the ALJ's credibility determination is patently erroneous because it is contrary to SSR 96-7p. She argues that the "ALJ mentioned SSR 96-7p, but failed to make any accurate findings concerning the seven factors the Ruling requires the ALJ to consider because the ALJ ignored or rejected the evidence corroborating the claimant's allegations." [Dkt.

11

19 at 18.] However, Young does not point to any factors regarding which the ALJ allegedly failed to make accurate finding, nor does she point to any evidence which would corroborate her allegations. She merely argues that the denial decision should be reversed because it is "contrary to the evidence and . . . SSR 96-7p." *Id*. This skeletal argument is undeveloped and unsupported; consequently it is waived. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257, *4 (S.D. Ind. Aug. 3, 2010).

Young also argues that ALJ's credibility determination requires reversal because it is perfunctory.[5] She cites to the boilerplate language in the decision as support. However, just because boilerplate language exists in the decision, it does not automatically require reversal of the decision. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). An ALJ must build an accurate and logical bridge between the facts and the conclusion. *Id.* That is just what the ALJ did. The ALJ considered Young's subjective complaints, Dr. Buonanno's opinions (which the ALJ gave the most weight), the treatments at Howard, the state agency's opinions, Young's daughter's opinion, and Young's daily living activities. [R. 15-16.] Young's argument that the ALJ did not specify what objective medical evidence she considered is baseless as it is clearly outlined in the decision. [R. 16.] The ALJ clearly set forth her reasons in a detailed manner, building a logical bridge from the facts to the conclusion, thus providing substantial evidence to support the credibility determination.

### C.   Substantial Evidence Supports the ALJ's Step Five Determination.

Finally, Young argues that the ALJ's hypothetical question to the vocational expert was erroneous because she failed to include Young's hallucinations, paranoia, anxiety and limited

---

[5] Young's argument that the ALJ's credibility determination is perfunctory is itself perfunctory. This language appears in the briefs of the counsel for Young time and time again without citing to any objective medical evidence that would support the claimant's subjective complaints, as counsel claims that the ALJ fails to do. This argument is also waived for being undeveloped; however, the Court will address it.

ability to concentrate, and the "many areas of marked impairment that rendered the claimant totally disabled as noted in the GAF assessments." [Dkt. 19 at 20; Dkt 29 at 14.] As discussed above, the GAF assessments alone do not render a claimant totally disabled. Regarding Young's hallucinations and paranoia, the ALJ discussed that there was no persuasive evidence of hallucinations and paranoia as Dr. Buonanno expressed doubt with the rule out schizoaffective disorder diagnosis and Young's daughter did not notice any unusual behaviors or fears. [R. 15.] Regarding Young's anxiety and limited ability to concentrate, the ALJ specifically accounted for this in her RFC determination which restricted her to jobs where she could be off task for 10% of the day and where her employer would tolerate one absence per month. In providing these limitations, the vocational expert determined that there were jobs that existed in significant numbers in the economy. Therefore, substantial evidence supports the ALJ's step five determination.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Young is not disabled and the Commissioner's decision is **AFFIRMED**.

Date: 02/08/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov